UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENDRICKS & LEWIS, PLLC,

    Plaintiff,

  v.

GEORGE CLINTON,

    Defendant.

Case No. C12-0841RSL

ORDER APPOINTING RECEIVER AND AUTHORIZING SALE OF COPYRIGHTS

This matter comes before the Court on plaintiff's "Motion for Appointment of a Receiver" (Dkt. # 31 in the above-captioned matter) and "Corrected Motion [] for an Order for Sale of Copyrights in Partial or Full Satisfaction of Judgments. (Dkt. # 73 in C11-1142RSL). Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

    Plaintiff Hendricks & Lewis, a law firm, obtained two judgments against its former client, defendant Clinton, in the amounts of $1,675,639.82 and $60,786.50. Despite numerous efforts to enforce those judgments in this and other district, plaintiff has recovered less than $340,000. Hendricks & Lewis therefore seeks appointment of a receiver to take control of the copyrights in four Funkadelic master sound recordings owned by defendant, to sell the copyrights, and to recover the outstanding judgment

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 1

amounts from the proceeds. Defendant argues that (1) the doctrine of claim preclusion bars plaintiff's attempts to recover on the judgment in this district and (2) the Copyright Act precludes the forced transfer of copyright ownership and therefore bars the relief plaintiff seeks. Each argument is considered below.

**A. CLAIM PRECLUSION**

In 2010, Hendricks & Lewis registered the larger of its two judgments in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1963. It then filed an action in that district seeking to have Clinton's royalty streams from third-parties (such as Capitol Records) assigned to Hendricks & Lewis in an attempt collect on the judgment. The Honorable Otis D. Wright II denied Hendricks & Lewis' motion for assignment of royalties on September 27, 2011. That denial is now on appeal to the Ninth Circuit. Clinton argues that Hendricks & Lewis is barred from seeking to execute the judgments at issue in this case under the doctrine of claim preclusion.

The Court has already rejected this argument in a related litigation. See Clinton v. Hendricks & Lewis, C11-1142RSL, Dkt. # 38 at 3-5 (W.D. Wash. Feb. 27, 2012). Plaintiff has again failed to show that this attempt to recover on the underlying judgments is duplicative of the previously-filed California action. A judgment creditor may enforce a judgment through one or more supplemental collection proceedings filed anywhere the judgment debtor has property subject to levy. While each of these proceedings seek the same relief, *i.e.*, the collection of money or assets to satisfy the outstanding judgment, it does not necessarily mean that every attempt to assert the rights of a judgment creditor is "duplicative" for purposes of the doctrine of claim preclusion. Otherwise judgment debtors who hold assets in multiple jurisdictions could force a creditor to chose one district in which to seek execution and forego any amounts that cannot be

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 2

recovered in that district. Such limitations would frustrate the enforcement of federal judgments. Because the California and Washington enforcement actions seek the recovery of different assets and there is no risk that Judge Wright's determination that Hendricks & Lewis was not entitled to the assignment of royalties under California law will be disturbed regardless of how this Court rules on plaintiff's request for assignment and judicial sale of four specific copyrights, the doctrine of claim preclusion does not apply. The Court once again finds that the two actions are not duplicative, despite the fact that they are based on the same underlying judgments.

**B. SECTION 201(e) OF THE COPYRIGHT ACT**

Clinton also argues that the relief sought by Hendricks & Lewis, namely the forced sale of copyrights, is prohibited by federal law. Pursuant to 17 U.S.C. § 201(e):

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

The leading authority on copyright calls § 201(e) "a curious provision," and rightly so. 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 10.04 (Matthew Bender, Rev. Ed. 2012). The provision had its genesis in the Cold War, but its reach and application in today's world has gone largely unanalyzed and is difficult to discern.

In 1973, Congress deemed a bar on involuntary transfers necessary in order to keep the Soviet Union from seizing ownership of works produced by dissident authors and enforcing the American copyright to prevent public distribution of the works in the United States. 119 Cong. Rec. S5613-S5614 (daily ed. Mar. 26, 1973) (statement of Sen. John L.

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 3

1   McClellan).  A stated purpose of the provision was to protect "foreign authors," and the
2   initial drafts of § 201(e) were aimed at acts "of a foreign state or nation."  Nimmer § 10.04
3   n. 2; 1 Paul Goldstein, Goldstein on Copyright § 5.1.6.1 at 5:20.1-5:21 n.72 (3d ed. Supp.
4   2008).  The provision as enacted, however, is not limited to acts by foreign governments.
5   Rather, it is a seemingly expansive bar against the use of government power to force an
6   author to transfer any of the exclusive rights under a copyright.
7             In In re Peregrine Entertainment, Inc., 116 B.R. 194, 206 n.16 (C.D. Cal.
8   1990), the court construed § 201(e) "as dealing with actions initiated by governmental
9   bodies, not with those where, as in the case of a judgment lienholder, the instruments of
10  government are merely acting in furtherance of private objectives."  The court concluded
11  that the "section has no application to governmental actions taken in the sphere of private
12  law where the government is merely enforcing private rights and is not the ultimate
13  beneficiary."  Id.  The language of the statute does not support this conclusion, however.
14  There is no indication that only acts initiated by the government are precluded.  The statute
15  bars not only the seizure, expropriation, or exercise of the rights of ownership by any
16  governmental entity, but also the forced transfer of rights by those entities.  If the statute
17  were construed to allow the government to transfer copyrights as long as a private party
18  initiates the action, the evil Congress intended to avoid could be accomplished simply by
19  generating a money judgment against the author.
20            Nor does the legislative history of § 201(e) suggest that Congress intended to
21  allow the government to force an author to give up his copyright as payment for an
22  unrelated debt.  The legislative history states that "[t]he purpose of this section is to
23  reaffirm the basic principle that the United States copyright of an individual author shall be
24  secured to that author, and cannot be taken away by any involuntary transfer."  H.R. Rep.
25
26  ORDER APPOINTING RECEIVER AND
    AUTHORIZING SALE OF COPYRIGHTS - 4

No. 1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5739.  When originally passed, the only types of transfers that escaped § 201(e)'s reach were voluntary sales/relinquishments and transfers triggered by the author's overt conduct and subsequent operation of law, such as the initiation of voluntary bankruptcy proceedings or the utilization of a copyright as security for a loan.  In such instances, Congress deemed the author to have consented to the transfer so that it was not involuntary for purposes of § 201(e).  Congress quickly realized, however, that bankruptcy proceedings under Title 11 can be imposed on the debtor and would not necessarily fall within the implied consent rationale.  Congress therefore felt it necessary to amend § 201(e) in 1978 to specifically exclude from its reach transfers ordered by the court to pay off creditors in a bankruptcy proceeding under Title 11.  Pub. L. 95-598, § 313, 92 Stat. 2676 (1978).  Given this legislative history, the Court finds that Congress chose its words with care to accomplish the goal of precluding all involuntary transfers of copyrights from an individual author unless specifically excluded.[1]  While the policy judgments inherent in the Peregrine Entertainment decision and championed by Goldstein are eminently reasonable, such judgments must be made by Congress, not the courts.

Nevertheless, the Court finds that Mr. Clinton is not entitled to the protections of § 201(e) because he is either an assignee of the original author or he has previously transferred the copyrights voluntarily.  Section 201(e) does not apply if the author is not an "individual" or if the copyright or an exclusive right thereunder has "previously been transferred voluntarily by that individual author."  Once again, there is almost no case law discussing or applying these limitations.  They are, however, consistent

---

[1] But see Goldstein § 5.1.6 at 5:21 (acknowledging that the "implied consent rationale does not extend to the judicial sale of a copyright at the instance of unsecured creditors," but arguing that "section 201(e)'s express political objectives suggest that these transfers, too, should be exempted).

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 5

with Congress' goal of protecting dissident authors' rights to control and disseminate their works.  Because the works of corporate entities did not excite Congress' concern in the Cold War context, only works of "individual" authors are protected from involuntary transfer.  Congress was also not interested in protecting works that the individual author had already relinquished to a third party.  Thus, the special protections afforded by § 201(e) are waived if the author was willing to voluntarily divest himself or herself of control over the work.

In this case, Mr. Clinton created the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" pursuant to a contract with Warner Bros.  "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of [the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C. § 201(b).  The initial agreements between Warner Bros. and Clinton (or his production company) specifically granted the copyrights in the sound recordings to Warner Bros.  Thus, Warner Bros. was the original "author" of the work under both the Copyright Act and the parties' contract.  Clinton, who obtained ownership of the sound recordings in 1993 pursuant to a settlement agreement with Warner Bros., is merely an assignee, not the author.  Even if the Court were to entertain the possibility that Clinton were the original author of the sound recordings at the moment they were created, he voluntarily transferred the copyrights to Warner Bros.  Either way, Clinton is not entitled to the protections of § 201(e).[2]  Absent those protections, the copyrights at

---

[2] At oral argument, defendant took the position that when Warner Bros. conveyed the copyrights in the master sound recordings back to Clinton in settlement of their dispute, the

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 6

issue are, like any other species of property, subject to judicial sale or assignment in order to satisfy a judgment.  See Ager v. Murray, 105 U.S. 126 (1881) (pre-§ 201(e) case directing patent holder to assign his rights in the patent so they could be sold to pay judgment or, if the patent holder failed to execute the assignment, appointing a trustee to execute the same).

Having determined that the relief sought by plaintiff is not barred by the Copyright Act, the Court finds that good and sufficient grounds exist for the appointment of a receiver pursuant to the Washington Act Relating to Receivership, RCW Ch. 7.60.  A receivership is necessary to ensure justice to the parties and to preserve the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" for the benefit of the parties and to make whole the judgment creditor, plaintiff Hendricks & Lewis, PLLC.  It is FURTHER ORDERED that:

**(1) Appointment of Receiver**

Gayle E. Bush of Bush Strout & Kornfeld LLP, 5000 Two Union Square, 601 Union Street, Seattle, WA  98101, is appointed as custodial receiver ("Receiver") of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies."  Receiver shall, within five (5) days of the date of this Order, submit to the court a receivership bond in the

---

original "for hire" agreement was "ripped up." According to defendant, the destruction of the document effectively erased the original agreement from existence, retroactively changing the reality of the parties' relationship such that the works were not made "for hire" and Clinton became the original "author" of the works. Defendant offers no support for this extraordinary theory. There is no contractual provision, case law, or point of logic that would bestow upon Clinton the title of "author" more than a decade after he contractually acknowledged Warner Bros.' statutory claim of authorship.

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 7

amount of $10,000.00 conditioned upon the faithful performance of his duties herein and compliance with the orders of this Court. The costs of the bond will be reimbursed to the Receiver from the assets of the receivership estate unless the Court finds that the bond has been forfeited. The Receiver shall not be subject to the control of any of the parties to this matter, but shall be subject only to the Court's direction in the fulfillment of his duties.

**(2) Powers and Duties of Receiver**

(a) The Receiver shall have all of the rights, powers, duties, and authority vested in him under the Washington Act Relating to Receivership, RCW Ch. 7.60, including but not limited to authority and control over the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies," in order to maximize the value of the sound recordings for the benefit of the parties and to make whole the judgment creditor, plaintiff Hendricks & Lewis, PLLC. Receiver shall, to the greatest extent possible, maximize the income stream from the Funkadelic master sound recordings without selling or otherwise permanently disposing of the copyrights. Ideally, the Receiver will utilize the copyright and sound recordings over a one or two year period to satisfy the judgments and pay the expenses of the receivership before returning the copyrights and master sound recordings to defendant. Notwithstanding the Court's preference for returning the recordings and copyrights to defendant after his debts are satisfied, the Receiver has the authority to sell or permanently dispose of any or all of the master sound recordings.

(b) The Receiver shall take immediate control and possession of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" and shall take whatever additional steps, if any, are necessary to have the copyrights in the sound

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 8

recordings assigned to him.  Defendant George Clinton (and/or his agents, employees, companies, or partnerships as necessary to effectuate the transfer) shall transfer each of the master sound recordings and/or copyrights to the control and possession of the Receiver and shall cooperate with the Receiver by taking all other necessary and appropriate actions to allow the Receiver to carry out the acts described in this Order.

(c) The Receiver shall have authority to use, sell, lease, or otherwise dispose of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" pursuant to RCW 7.60.260.  Except as may otherwise be ordered by this Court, the public notice period for disposition of any or all of the master sound recordings shall not be less than thirty (30) days.  As noted above, the preferred course of action is for the Receiver to maximize the income stream from the Funkadelic master sound recordings without selling or otherwise permanently disposing of the copyrights.

(d) The Receiver is authorized to contract with, hire, pay, direct, and discharge all persons reasonably deemed necessary by the Receiver, in his sole discretion, for the maintenance, use, and liquidation of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" in his efforts to maximize the value of the sound recordings for the benefit of the parties and to make whole the judgment creditor, plaintiff Hendricks & Lewis, PLLC.

(e) Upon disposition of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies," return of the master sound recordings to defendant, and/or completion of the Receiver's duties hereunder, the Receiver shall move the Court to be

discharged.  The Receiver shall continue to perform the duties set forth in this Order with the aim of maximizing the value of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" for the benefit of the parties and to make whole the judgment creditor, plaintiff Hendricks & Lewis, PLLC, until discharged by the Court.

**(3)  Fees and Expenses of Receiver**

Receiver shall be entitled to utilize the services of his law firm and to charge as fees the standard hourly rates for himself and the law firm's services in carrying out his duties as Receiver.  The Receiver and his law firm shall be reimbursed for all reasonable costs expended in this matter and shall provide monthly notice of the fees he and his staff incurred and the services provided.  In addition, the Receiver shall, within one business day of incurring or contracting to incur any third-party expense of over $100, give notice of the expense to plaintiff, defendant, any other person or entity that has requested notice, and any person or entity that has asserted a lien against the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies."  If no written objection served on all interested parties is made to the fees or expenses within ten (10) calendar days following the date of notice, the fees and expenses shall be deemed approved as being fully and finally earned.  The approved fees and expenses shall be paid from the assets of the receivership estate and shall be a first priority lien on the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies," with priority over all other liens including statutory liens.  If the interested parties are unable to resolve an objection to a fee or expense within thirty (30) days of the date of such objection, any party may file a motion with the Court to resolve the objection.

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 10

**(4) Reporting and Court Approvals**

Within sixty (60) days of this Order,[3] the Receiver shall file: (i) an inventory of all property acquired; (ii) a report of his activities; and (iii) the professional fees and expenses incurred to date. Thereafter, the Receiver shall file a quarterly report of his operations and financial affairs in the above-captioned matter that includes the information set forth in RCW 7.60.100, with the first such report due on April 5, 2013. The Receiver is expressly relieved from the monthly reporting requirement of the statute.

If the Receiver determines that the sale of one or more of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" is the best way to maximize the value of the sound recordings for the benefit of the parties and to make whole the judgment creditor, plaintiff Hendricks & Lewis, PLLC, he shall petition the Court for approval at least sixty (60) days before the scheduled sale, setting forth a plan for notifying all interested parties (including any lienholders) and the public, a statement regarding the existence and amount of any outstanding liens, and the estimated proceeds of the sale. If the Court approves the sale, the copyrights to the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" will, unless otherwise ordered by the Court, be sold free and clear of any liens, whether or not the sale will generate proceeds sufficient to fully satisfy the claims secured by the sound recordings, and all security interests and liens encumbering the sound recordings shall attach to the proceeds of the sale, net of reasonable expenses incurred in the disposition of the sound recordings, in the same order, priority,

---

[3] If defendant files a Notice of Appeal in this action, the initial report shall be due within sixty days of the final disposition of the appeal.

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 11

and validity as the liens had with respect to the sound recordings as of the date of this Order

**(5) Distribution of Funds**

During the term of the Receiver's appointment and until further order of the Court, the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" shall remain under the Court's exclusive jurisdiction. Proceeds of the sale, lease, or other disposition or use of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" shall be deposited by the Receiver in an FDIC-insured account established at an insured financial institution until a final order of the Court is entered regarding distribution of the funds.

**(6) Non-Interference**

The judgment debtor is prohibited from the sale, transfer, or other disposition of the Funkadelic master sound recordings "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "The Electric Spanking of War Babies" unless and until the Receiver is discharged. Defendant George Clinton and his agents, employees, companies, and partnerships are hereby restrained from interfering with the Receiver's efforts to maximize the value of the sound recordings or from taking any actions that would reduce the value of the sound recordings.

For all of the foregoing reasons, plaintiff's "Motion for Appointment of a Receiver" (Dkt. # 31 in the above-captioned matter) and "Corrected Motion [] for an Order for Sale of Copyrights in Partial or Full Satisfaction of Judgments. (Dkt. # 73 in C11-1142RSL) are GRANTED. Plaintiff shall provide statutory notice of entry of this Order to

ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 12

1 defendant.

2 Because the legal issues raised in this case are novel, the Court has not found 3 any reported case authorizing the relief afforded herein, and there is no just reason for 4 delaying defendant's ability to seek appellate review prior to execution despite this Court's 5 continuing jurisdiction over this matter, the Clerk of Court is directed to enter partial 6 judgment in favor of plaintiff and against defendant pursuant to Fed. R. Civ. P. 54(b).  This 7 Order is hereby STAYED for thirty days to give defendant an opportunity to file a Notice 8 of Appeal.  If a timely Notice is not filed, this Order shall automatically become effective at 9 the end of the thirty-day period.  If defendant files a Notice of Appeal, this Order shall go 10 into effect, if at all, upon final disposition of the appeal.

12 Dated this 27th day of November, 2012.

14 *(signature)*

15 Robert S. Lasnik
16 United States District Judge

26 ORDER APPOINTING RECEIVER AND
AUTHORIZING SALE OF COPYRIGHTS - 13