The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENDRICKS & LEWIS PLLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE CLINTON, an individual,<br><br>Defendant. | No. C12-0841RSL<br><br>DEFENDANT GEORGE CLINTON'S RESPONSE TO HENDRICKS & LEWIS PLLC's MOTION UNDER FRCP 70 FOR AN ORDER DIVESTING CLINTON OF THE COPYRIGHTS IN THE FUNKADELIC MASTERS AND HOLDING HIM IN CONTEMPT |

Defendant George Clinton ("Clinton") respectfully submits this response in opposition to judgment creditor Hendricks & Lewis LLP's ("H&L") motion under Fed. R. Civ. P. 70 for an order to divest or assign his Funkadelic Masters' copyrights to the Receiver, and to hold Clinton in contempt for not turning over the Masters' sound recordings to the Receiver (Doc. 144). The Court should not take these punitive measures against Clinton because he has not been clearly and definitively ordered to assign the copyrights, he cannot turn over sound recordings previously conveyed to a third party, and the relief sought would be unnecessary and unjust.

**FACTUAL AND PROCEDURAL BACKGROUND**

Between 1974 and 1981, Clinton's musical group Funkadelic recorded four albums released by Warner Bros. Records ("Warner"): *Hardcore Jollies*, *One Nation Under a Groove*, *Uncle Jam Wants You*, and *The Electric Spanking of War Babies*

CLINTON'S RESPONSE TO
PLAINTIFF'S MOTION
UNDER FRCP 70
Case No. 2:12-cv-00841

Page 1

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

(collectively, the "Masters"). Declaration of George Clinton ("Clinton Decl.") ¶ 3. In 1982 Warner agreed to relinquish its ownership and control of the copyright in the Masters ("the Copyrights") to Clinton upon being paid certain royalties, which Warner received in 1993. *Id.* ¶¶ 4-5. Confirming Clinton's ownership, the United States District Court for the Central District of California found he was the Copyrights' sole owner since 1993. *Montes v. Kaplan, Kenegos & Kadin*, No. 2:03-cv-08955-R-Mc, ECF No. 121 & 122 (C.D. Cal. June 20, 2005); Clinton Decl. ¶ 6.

By a settlement agreement between Clinton and the *Montes* counterclaimants, all proceeds from exploitation of the Masters were to accrue to Clinton and be deposited and held in a trust account to be administered by H&L. Doc. 105 p. 5; Doc. 105-2 p. 33; Clinton Decl. ¶ 7. Both the trust account and H&L's duties as administrator were to terminate once H&L collected and paid the counterclaimants $60,000 in royalties. *Id.* H&L had briefly appeared on Clinton's behalf near the end of the *Montes* litigation. Clinton Decl. ¶ 8. Millions of dollars of Clinton's royalties were soon funneled through H&L, but it allocated no funds to the trust account. *Id*. H&L purported to withdraw as administrator and unilaterally appoint a substitute, Finney, Neil & Co., in 2006. Doc. 105-2 pp. 29-30. The *Montes* settlement allowed such substitution only if the settling parties so agreed, but neither party had agreed. *See id.* p. 18; Doc. 105 p. 6 n. 3; Clinton Decl. ¶ 9. Finney, Neil & Co. wired $9,000 to the *Montes* counterclaimants in March 2007, the only funds yet paid toward the $60,000. Doc. 105-2 p. 20; Clinton Decl. ¶ 9. H&L did not embark upon a path of licensing aimed to collect the $60,000, end its role as the Copyrights' administrator and return the Copyrights to Clinton. *Id.* ¶ 10. Instead, H&L pursued costly litigation against Capitol Records on Clinton's behalf, alleging breach of fiduciary duty and breach of contract (*Clinton v. Capitol Records, Inc.*, No. CV 06-7484 (C.D. Cal. filed Nov. 22, 2006)) and infringement of the Copyrights (*Clinton v. Capitol Records, Inc.*, No. CV 06-8106 (C.D. Cal. filed Dec. 19, 2006). Clinton Decl. ¶ 10. H&L ultimately negotiated a $1.2 million settlement with Capitol and billed Clinton

CLINTON'S RESPONSE TO PLAINTIFF'S MOTION UNDER FRCP 70
Case No. 2:12-cv-00841

Page 2

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

$3,341,650.32 for its services, far exceeding the proceeds of the Capitol settlement. *Id*. ¶ 11. Clinton paid H&L $1,000,578.87, including half of the Capitol proceeds. *Id*.

Clinton entered a May 7, 2009 agreement granting SARL FUAS Music, a French licensee, the right to release and distribute CDs incorporating the Masters. Clinton Decl. ¶ 12 & Ex. A; Doc. 63 p. 4.

H&L initiated arbitration proceedings over the balance, obtaining an award totalling $1,675,639.82 in H&L's favor. Clinton Decl. ¶ 13. This Court confirmed the award and awarded judgment in that amount, plus awards of $940 in costs and $60,786.50 in attorney's fees. *Id*. ¶ 14. H&L has collected at least $1,172,764.44 of that $1,737,366.32 total. *Id*. ¶ 15; Doc. 144-2 p. 49. H&L reported in another action, in Tennessee, that as of May 23, 2015, $189,402.15 of Clinton's BMI royalties are in the Tennessee district court's bank account, awaiting distribution to H&L. *Id*. ¶ 15.

In August 2010, Clinton conveyed the original physical sound recordings of the Masters (the "Recordings") to non-party the Barack Obama Green Charter High School Foundation (the "School"). Clinton Decl. ¶ 16. He also conveyed 25% of the Copyrights to the School by letter dated, signed and notarized on August 11, 2010. *Id*. & Ex. B. In December 2010, H&L recognized that conveyance in a motion in another case in California: "On August 17, 2010, Defendant announced through his 'George Clinton and Parliament Funkadelic' MySpace.com blog that he was gifting a 25 percent interest in four of his most well-known sound recordings ... granting to 'The Barack Obama Green Charter High School Foundation' a 25 percent interest in his song writer's and publisher's royalties from various Clinton entities..."). Clinton Decl. ¶ 17 & Ex. C. The California court granted the motion in which H&L cited Clinton's gift to the School for support. *Id*. ¶ 18.

On May 12, 2012, while that California motion was still pending on appeal, H&L initiated this action by moving for an order for a debtor's examination against Clinton. Doc. 1. Clinton appeared *pro se* at the debtor's examination before Judge Pechman on June 12, 2012. Doc. 21. He testified forthrightly that he no longer

| CLINTON'S RESPONSE TO PLAINTIFF'S MOTION UNDER FRCP 70 Case No. 2:12-cv-00841 | Page 3 | BOOTH SWEET LLP 32R Essex Street Cambridge, MA 02139 (617) 250-8602 Telephone |

owned the Recordings, which were now located at the School, and that he gave part ownership of the Copyrights to the School in 2010. Clinton Decl. ¶ 19 & Ex. D. H&L's counsel conceded that day that Clinton's transfer to the School had not been unlawful because it was not prohibited by any court order. *Id.* ¶ 20 & Ex. E.

On August 7, 2012, H&L moved the Court for an order to appoint a receiver and direct assignment of the Copyrights to the receiver, making express reference to Clinton's testimony about his gift to the School. "Clinton also testified that he gifted others of the Funkadelic master recordings to a school—the Obama Charter School —in New Jersey." Doc. 31 p. 8; *see also id.* pp. 2-3 ("Clinton ... declares that he has gifted others of these sound recordings"). H&L filed 24 pages of excerpts from Clinton's testimony in support of its motion, including several excerpts about his donation to the School. Doc. 32-1 pp. 7-30; *see id.* p. 18 (Q. "Did you get any money from the Obama school when you transferred or assigned any interest in those recordings?" A. "No." Q. "So it was a contribution that you made?" A. "Yes.") & p. 20 ("Yes, I claim I own them [the Masters]. I also know that I licensed the masters to somebody else, and gave 25 percent of it to the Obama school."). H&L filed a proposed order, under which the receiver would "take and have possession of" the Copyrights, not the Recordings. Doc. 31-1 ¶ 7.

On November 27, 2012, the Court entered the Order Appointing Receiver and Authorizing Sale of Copyrights ("Order"). Doc. 62. The Order distinguished between the Copyrights and the physical master tapes (the Recordings) on which the Masters are embodied, granting different forms of authority over each. The Order appointed Gayle E. Bush as custodial receiver (the "Receiver") of the Recordings. *Id.* p. 7. The Order granted him "authority and control over the Funkadelic master sound recordings," that is, the Recordings, to maximize their value. *Id.* p. 8. His duty is to "maximize the income stream from the [Recordings] without selling or otherwise permanently disposing of the copyrights." *Id.* "Notwithstanding the Court's preference for returning the recordings and copyrights to defendant [Clinton]

after his debts are satisfied, the Receiver has the authority to permanently dispose of any or all of the master sound recordings." *Id.* Accordingly, the Court authorized the Receiver to "use, sell, lease, or otherwise dispose of" the Recordings, with a 30-day public notice period for any such disposition. *Id.* p. 9 (noting again "the preferred course of action is for the Receiver to maximize the income stream from [the Recordings] without selling or permanently disposing of the copyrights"). Consistent with that distinct treatment of Recordings and Copyrights, the Order required that the "Receiver shall take immediate control and possession of the Funkadelic master sound recordings," while separately stating that he "shall take whatever *additional steps, if any, are necessary* to have the copyrights in the sound recordings assigned to him [the Receiver]." *Id.* pp. 8-9 (emphasis added).

The Order included two directives for Clinton. Clinton Decl. ¶ 22. First, "Defendant George Clinton (and/or his agents, employees, companies, or partnerships as necessary to effectuate the transfer) shall transfer each of the *master sound recordings and/or copyrights* to the control and possession of the Receiver and shall cooperate with the Receiver by taking all other necessary and appropriate actions to allow the Receiver to carry out the acts described in this Order." Order p. 9 (emphasis added). Second, Clinton was ordered not to sell, transfer, or otherwise dispose of the Recordings during the receivership, or interfere with the Receiver's efforts to maximize the Recordings' value, or act to reduce their value. *Id.* p. 12.

Clinton filed a notice of appeal of the Order on January 7, 2013. Doc. 67. The Court stayed the case pending the outcome of the appeal. Doc. 75. The Ninth Circuit affirmed the Order on June 23, 2014 and amended its opinion on August 26, 2014, again affirming. Doc. 76, 78. The mandate issued December 9, 2014. Doc. 83. An order amending the mandate issued January 6, 2015. Doc. 87. Also on January 6, 2015, Clinton notified the Receiver that he was not in possession or control of the Recordings, which were in the School's possession, and that he had assigned 25% of his interest in the Copyrights to the School. Doc. 105-2 Ex. C; Clinton Decl. ¶ 25.

Clinton declared on February 3, 2015, "I am prepared to transfer custody of my remaining 75% share of the copyrights in the Masters to the receiver, to the extent necessary to satisfy the balance due on the judgment." Doc. 105-1 ¶ 17.

On March 20, 2015, the Receiver sent Clinton a proposed copyright assignment agreement ("Assignment") drafted by the Receiver's special counsel, Mark Wittow of K&L Gates LLP. Doc. 123 ¶ 6; Doc. 125 ¶ 3. Though the Order only directed an assignment of the Copyrights if such additional steps were necessary, the Assignment sought a transfer, and far more. Clinton Decl. ¶ 26 & Ex. F. Clinton documented the Assignment's excesses in derogation of the Order by letter to the Receiver on March 25, 2015. Clinton Decl. ¶ 26 & Ex. G. Clinton also again noted that he had donated the Recordings to the School in 2010 and conveyed 25% of the Copyrights to the School. *Id.*

Mr. Wittow revised the proposed agreement at the Receiver's direction five more times, and after each revision the Receiver returned it to Clinton for review or execution. Clinton Decl. ¶ 27; Doc. 125 ¶¶ 4-8. In so doing, the Receiver "unilaterally expanded both the scope of and the time limitations on K&L Gates' employment." Doc. 137 p. 2. In the meantime Clinton has cooperated in helping the Receiver comply with the Order. Clinton told the Receiver the Recordings are at the School and told the School to expect to hear from the Receiver. Clinton Decl. ¶ 28; Doc. 105-2 Ex. C. Clinton has forwarded to the Receiver all Copyrights licensing requests he receives, acceding to the Receiver's exercise of control. Clinton Decl. ¶ 28. Clinton concluded that the Order does not require him to assign the Copyrights, and so notified the Receiver on July 31, 2015. Clinton Decl. ¶ 29; Doc. 141-1.

On June 25, 2015, the Court entered an Order Compelling Turnover of Master Recordings, directing the School, a non-party, to turn over the Recordings to the Receiver, and directing Clinton and the School's Steven King to cooperate with the Receiver in the turnover. Doc. 136 ("Turnover Order") p. 2. Clinton has complied to the extent possible, but the Recordings are in the School's hands. Clinton Decl. ¶ 30.

CLINTON'S RESPONSE TO PLAINTIFF'S MOTION UNDER FRCP 70
Case No. 2:12-cv-00841

Page 6

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

## LEGAL STANDARD

"If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party." Fed. R. Civ. P. 70(a). "If the real or personal property is within the district, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance." Fed. R. Civ. P. 70(b). "The court may also hold the disobedient party in contempt." Fed. R. Civ. P. 70(e).

Rule 70 "is operative only when a party refuses to comply with a judgment." *McCabe v. Arave*, 827 F.2d 634, 639 (9th Cir. 1987) (citing *De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 218 (1945)). "Rule 70 gives the district court a discrete and limited power to deal with parties who thwart final judgments by refusing to comply with orders to perform specific acts." *Analytical Engineering, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 449 (7th Cir. 2005) (citing 12 Charles Alan Wright, Arthur R. Miller & Richard Marcus, Federal Practice & Procedure § 3021 (1997). The party's "strict compliance with the letter of the district court's order is the only issue of consequence." *Id.* at 450.

> The express language of Rule 70 establishes the extent of the district court's limited post-judgment authority: "If a judgment directs a party . . . to perform any other specific act . . . and the party fails to comply within the time specified, the court may direct the act to be done . . . ." FED. R. CIV. P. 70. We recognize that a district court's purview under Rule 70 is limited to effectuating its final-judgment orders, and that in granting relief under Rule 70, a district court cannot grant new rights or extinguish previous rights held by either party. Under Rule 70, therefore, a district court may direct a party to complete a specific act where the district court previously directed the same party to perform the same act in its final judgment and that party has failed to comply.

*Id*. at 451. "Civil contempt … consists of a party's disobedience to a specific and definite court order by failure to take all reasonable attempts within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence," not merely a preponderance of the evidence." *Id*. (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). A "person should not be held in contempt if his action 'appears to be based on a good faith reasonable interpretation of the' court's order." *Id*. (quoting *Vertex*, 689 F.2d at 889). "'Substantial compliance' with the court order is a defense to civil contempt[.]" *Id*. (quoting *Vertex*, 689 F.2d at 891).

## ARGUMENT

Clinton has complied with the terms of the Order, performing all specific acts required. Clinton acceded to the Receiver's exercise of authority over the Copyrights pursuant to the Order. Yet complying with the Order to transfer the Recordings to the Receiver was impossible since Clinton had already transferred them to the School.

**I.  Clinton does not construe the Order as requiring an assignment of the Copyrights because he has complied with the Order's authorization of the Receiver to license the Copyrights.**

Rule 70 applies "only when a party refuses to comply with a judgment." *McCabe*, 827 F.2d at 639. Clinton reasonably and in good faith does not understand the Order as requiring him to execute an assignment of the Copyrights to the Receiver. Even if it did, Clinton has substantially complied with the Order by acceding to the Receiver's control of the Copyrights, so he has not violated Rule 70.

The Order properly distinguishes between the Copyrights and the Recordings. *See* 17 U.S.C. § 202 ("Ownership of a copyright ... is distinct from ownership of any material object in which the work is embodied."). The Order is focused largely on the latter. H&L had moved for an order appointing a receiver and directing

assignment of the Copyrights to the receiver, who would then sell the Copyrights. Doc. 31 p. 1. H&L proposed an order by which the Receiver would promptly "take and have possession of" the Copyrights. Doc. 31-1 ¶ 7. H&L's motion and proposed order did not provide for the Receiver to take control of the physical Recordings. *Id.* At the motion hearing H&L recognized, "This motion doesn't request the sale of those master recordings themselves, but only the copyrights." Doc. 73 at 13:13-15. Mr. Bush stated, "I am concerned about the issue that there are only the copyrights and not the master recordings [within the proposed order]." *Id.* at 15:10-12. Despite H&L's proposal, the Court ordered the Receiver to "take immediate possession and control" of the Recordings, not the Copyrights. Doc. 62 p. 8.

  The Order authorized the Receiver to maiximize the value of, and income stream from, the Recordings, "without selling or otherwise permanently disposing of the copyrights." *Id.* By contrast, the Order expressly authorized the Receiver "to sell or permanently dispose of any or all of the master sound recordings." *Id.* Clinton was directed to "transfer each of the master sound recordings *and/or* copyrights to the control and possession of the Receiver." *Id.* p. 9 (emphasis added). By its terms, the Order did not clearly require a copyright assignment. Clinton was directed to "cooperate with the Receiver by taking all other necessary and appropriate actions to allow the Receiver to carry out the acts described in this Order." *Id.* He has done so.

  The Order further provided that the Receiver "shall take whatever *additional steps, if any, are necessary* to have the copyrights in the sound recordings assigned to him." Order pp. 8-9 (emphasis added). No such additional steps are necessary because the Receiver is acting in control of the Copyrights for all practical purposes, with Clinton's support. Clinton was prepared to comply and assign his 75% share of the Copyrights to the Receiver, though the Order did not clearly direct it. Clinton Decl. ¶ 25. When the Receiver proposed terms of an assignment, Clinton duly negotiated in good faith, though he reasonably objected to the Receiver's proposals for an assignment beyond any arguable scope of the Order. *See id*. ¶ 26 & Exs F, G.

CLINTON'S RESPONSE TO  
PLAINTIFF'S MOTION  
UNDER FRCP 70  
Case No. 2:12-cv-00841

Page 9

BOOTH SWEET LLP  
32R Essex Street  
Cambridge, MA 02139  
(617) 250-8602 Telephone

At the same time, the Receiver assumed control over licensing the Copyrights, and Clinton has not interfered. Indeed, Clinton has forwarded to the Receiver each licensing request he receives for the Copyrights. Clinton Decl. ¶ 28. Clinton has acceded this effective change of control, which has rendered any additional steps to have the copyrights assigned to the Receiver unnecessary. With Clinton's support, the Receiver is utilizing the Copyrights "to satisfy the judgments and pay the expenses of" the receivership, as the Order envisioned. Doc. 62 p. 8. H&L identifies no need for Rule 70 relief from this cooperative activity.

The Receiver is receiving and "responding to requests for licensing of the Masters." Doc. 138 p. 3. Thus, the Receiver is already exercising one of the incidents of copyright ownership. *See DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F. 2d 24, 28 (2d Cir. 1982) ("one of the benefits of ownership of copyrighted material is the right to license its use for a fee"); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1018 (9th Cir. 2001) ("copyright holder['s] right to license the material").

Clinton has assisted in all steps necessary and appropriate to allow the Receiver to fulfill the Order. Though Clinton and the Receiver negotiated over the terms of an assignment, Clinton believes that the Receiver's functional control over the copyrights renders any written assignment unnecessary. The Copyrights are in the Receiver's hands for all purposes within the Order, so Clinton has complied with the Order and has not violated Rule 70. *See* Clinton Decl. ¶¶ 28-29 & 31.

H&L is estopped from the argument that takes up most of its Rule 70 Motion: denying that Clinton gave the School 25% of the Copyrights. *See* Doc. 144 pp. 6-11. In December 2010, H&L argued to the Central District of California that Clinton's MySpace announcement of the gift supported a protective order against him. Clinton Decl. ¶ 17 & Ex. C. H&L ultimately prevailed on that motion. *Id.* ¶ 18. In this Court, H&L cited to Clinton's testimony about his gift to the School in its motion for an order appointing a receiver. Doc. 31 p. 8; *see also id.* pp. 2-3 & Doc. 32 Ex. 3. H&L did not then contest the fact or validity of the donations; instead it conceded that the

CLINTON'S RESPONSE TO  
PLAINTIFF'S MOTION  
UNDER FRCP 70  
Case No. 2:12-cv-00841

Page 10

BOOTH SWEET LLP  
32R Essex Street  
Cambridge, MA 02139  
(617) 250-8602 Telephone

donations were not unlawful. Clinton Decl. ¶¶ 19-20 & Ex. E. Judicial estoppel precludes H&L denying the fact of this gift, which H&L previously litigated and persuaded the California court to accept. *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001). Clinton's testimony that he had licensed the Copyrights to the French company FUAS Music was not inconsistent because that license issued in 2009, when Clinton held full ownership. Clinton Decl. ¶ 12 & Ex. A. It was also consistent for Clinton to testify and declare that he is the Copyrights' owner. *See* Doc. 144 pp. 8-11. Since 2010, he has been a co-owner with the School. It is finally of no moment that the assignment is identified as a "Letter of Intent," *see* Doc. 144 p. 7, because it unconditionally specifies Clinton's present-tense action: "I George Clinton Jr on this day August 11, 2000 am assigning..." Clinton Decl. Ex. B. *See Ankeny v. Meyer (In re Ankeny)*, 184 B.R. 64, 71 (Bankr. 9th Cir. 1995) ("If the parties so intended, a letter of intent constitutes a binding contract."); *HIMC Corp. v. Ramchandani*, 385 Fed. App'x 632, 633 (9th Cir. 2010) ("a document labeled as a 'letter of intent' may constitute an enforceable contract under Washington law").

## II. Clinton could not transfer the Recordings to the Receiver because he transferred them to the School in 2010.

The Recordings—the original master tapes of the Masters—have been out of Clinton's hands since he donated them to the School in August 2010. Clinton Decl. ¶ 16. This is not news to H&L, the Receiver or the Court, though H&L falsely claims that Clinton never raised the issue before. *See* Doc. 144-4 p. 4 ("Although he did not raise any issue as to his ownership and control before entry of the Court's Order or in his appeal, he now asserts that the Order was in error because he does not own or control the master recordings."). In his 2012 debtor's examination, Clinton testified that he does not own the Recordings; that they were now located at the School in Plainfield, New Jersey; that he was positive the Recordings were there because he had left them there; and that he had conveyed part ownership of the Masters to the School two years earlier. *Id.* ¶ 19 & Ex. D. H&L's counsel discussed this testimony

CLINTON'S RESPONSE TO
PLAINTIFF'S MOTION
UNDER FRCP 70
Case No. 2:12-cv-00841

Page 11

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

with Judge Pechman, *id.* ¶ 20 & Ex. C, and filed excerpts from Clinton's testimony about the School in support of its motion to appoint the Receiver. Doc. 32-1 Ex. B. Clinton has often explained that the School controls the Recordings. *See* Doc. 105-2 Ex. C (January 6, 2015 letter to Receiver); Doc. 105 p. 6, Doc. 105-1 ¶ 15 (February 3, 2015 status report and declaration); Ex. G (March 25, 2015 letter to Receiver).

Since he gave the Recordings to the School, Clinton had no ability to transfer them to the Receiver. He cannot be held in contempt for failing to do the impossible. "Conditioning an order of contempt on the performance of an impossible act, for the purpose of punishing a contemnor for its incapacity to perform the act, does not square with the Supreme Court's admonishment that 'every precaution should be taken that orders issue..., only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order.'" *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 781 (9th Cir. 1983) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). "Impossibility of performance is a complete defense to a civil contempt charge." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999).

The Recordings have not been Clinton's property since 2010 so they should not have been included in the receivership estate in 2012. "[I]t is axiomatic that a receiver may only transfer such property interests as are owned by the estate, not more. ... The receiver 'takes property as he finds it ...' and cannot transfer any better or different interest than the [debtor] had." *Aqua-Chem, Inc. v. Marine Sys.*, Case No. C13-2208JLR, 2014 U.S. Dist. LEXIS 26315, *8 (W.D. Wash. Feb. 27, 2014) (*quoting Morse Electro Prods. Corp. v. Benefit Indus Loan Co.*, 90 Wn. 2d 195, 579 P.2d 1341, 1342 (Wash. 1978) *and citing Colver v. Fraser, Goodwin & Colver*, 166 Wash. 398, 7 P.2d 24, 26 (Wash. 1932)). *Accord John A. Roeblings Sons Co. v. Frederickson Logging & Timber Co.*, 153 Wash. 580, 585 (Wash. 1929) ("A receiver can acquire no other, greater, or better interest than the debtor had in the proprety, and to this extent the receiver has been held to stand in the shoes of the debtor.").

CLINTON'S RESPONSE TO PLAINTIFF'S MOTION UNDER FRCP 70
Case No. 2:12-cv-00841

Page 12

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

The Order effectively placed the Receiver in Clinton's shoes. *See Morse Electro*, 90 Wn. at 198, 579 P.2d at 1342 ("the receiver stands in the shoes of the insolvent"). Clinton had conveyed the Recordings so they were beyond his control, and beyond the Receiver's control too. "Under the first sale doctrine [codified at 17 U.S.C. § 109], the copyright owner cannot control the future transfer of a particular copy once its material ownership has been transferred." *Video Pipeline, Inc. v. Buena Vista Home Entm't*, 192 F. Supp. 2d 321, 333 (D.N.J. 2002), *aff'd*, 342 F.3d 191 (3d Cir. 2003). As Clinton sang on one of the Masters: "You can walk a mile in my shoes/But you can't dance a step in my feet." Funkadelic, *One Nation Under A Groove, on* One Nation Under A Groove (Warner Bros. Records 1978).

## CONCLUSION

Clinton faithfully complied and cooperated with the Order and, to the extent possible, the Turnover Order, so Rule 70 relief would not be properly granted. *See Univ. of W. Va. v. VanVoorhies*, 342 F.3d 1290 (Fed. Cir. 2003) (reversing order denying relief from Rule 70 order) (appellant had assigned all patents required under order and Rule 70 did not reach continuation patents beyond scope of prior order).

H&L should be granted no relief under its over-reaching motion. Clinton had already paid $1,000,578.87 toward H&L's bills before it initiated proceedings against him. They have collected at least another $1,172,764.44, with $189,402.15 in Clinton's BMI royalties pending distribution in Tennessee and at least $52,929.25 already forthcoming from the Receiver's licensing: a total of $1,415,095.84, or more than 80% of the balance on the $1,737,366.32 in the judgments in this case. Yet H&L is not content to comply with the Order, as Clinton has. As H&L notes, *see* Doc. 144 p. 11, the Receiver continues to incur fees and costs, while H&L compiles more attorney's fees and costs awards against Clinton, as if to forever postpone the date on which he will finally be done paying them and the receivership can be concluded. The bludgeon of Rule 70 is neither necessary or appropriate, so the motion should be denied.

CLINTON'S RESPONSE TO
PLAINTIFF'S MOTION
UNDER FRCP 70
Case No. 2:12-cv-00841

Page 13

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

Respectfully submitted,

DATED this 31st day of August, 2015

| BOOTH SWEET LLP | LEE & HAYES PLLC |
|---|---|
| /s/ Dan Booth<br>Dan Booth (MA Bar No. 672090)<br>BOOTH SWEET LLP<br>32R Essex Street<br>Cambridge, MA 02139<br>dbooth@boothsweet.com<br>Telephone:  (617) 250-8602<br>Facsimile :  (617) 250-8883<br><br>*Admitted Pro Hac Vice* | Geana M. Van Dessel, WSBA #35969<br>601 W. Riverside Ave., Suite 1400<br>Spokane, WA 99201<br>Telephone:  (206) 315-4001<br>Facsimile :  (206) 315-4004<br>GeanaV@leehayes.com<br><br>Robert J. Carlson, WSBA #18455<br>701 Pike Street, Suite 1600<br>Spokane, WA 99201<br>Telephone:  (509) 324-9256<br>Facsimile :  (509) 323-8979<br>Bob@leehayes.com<br><br>*Local Counsel* |

*Attorneys for Defendant George Clinton*

CLINTON'S RESPONSE TO
PLAINTIFF'S MOTION
UNDER FRCP 70
Case No. 2:12-cv-00841

Page 14

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
(617) 250-8602 Telephone

# CERTIFICATE OF SERVICE

I hereby certify that on this August 31, 2015 I caused the foregoing document to be electronically filed by using the Court's CM/ECF system, which will automatically send notification of the filing to the following:

**Forsberg & Umlauf, PS**
Jeffrey T. Kestle, WSBA #29648
jkestle@forsberg-umlauf.com
Roy Andrew Umlauf, WSBA #15437
rumlauf@forsberg-umlauf.com
901 5th Ave, Suite 1400
Seattle, WA 98164-1039
*for Plaintiffs Hendricks & Lewis PLLC and Oscar Yale Lewis, Jr.*

**Davis Wright Tremaine**
Frederick Ross Boundy, WSBA #403
RossBoundy@dwt.com
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
*for Plaintiff Hendricks & Lewis PLLC*

**Hendricks & Lewis, PLLC**
Katherine Hendricks, WSBA #14040
kh@hllaw.com
901 Fifth Ave, Suite 4100
Seattle, WA 98164
Telephone: (206) 624-1933
*for Plaintiff Hendricks & Lewis PLLC*

**Bush Strout & Kornfeld LLP**
Katriana L. Samiljan, WSBA #28672
ksamiljan@bskd.com
601 Union Street #5000
Seattle, WA 98101
*for Receiver Gayle E. Bush*

/s/ Dan Booth
Dan Booth (MA Bar No. 672090)